IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:20CR241 |
| vs. | GOVERNMENT'S TRIAL BRIEF |
| LINDSEY L. BIXBY, | |
| Defendants. | |

## TRIAL BRIEF FOR THE UNITED STATES

The United States submits the following Trial Brief regarding issues that may arise during the trial.

### Procedural Background

On September 24, 2020, a federal grand jury returned a one-count indictment charging defendant Lindsey L. Bixby with one count of using excessive force against B.D. while acting under color of law, in violation of 18 U.S.C. § 242. The indictment charges that the offense includes the use of a dangerous weapon, Bixby's patrol-issued rifle, and caused bodily injury to B.D.

### Factual Background

In the early morning hours of March 4, 2016, the defendant was called onto duty to assist Nebraska State Patrol (NSP) Trooper Kyle Kuebler with a high-speed chase of a silver van (driven by B.D.), which began when Kuebler initially pulled him over for speeding. The subsequent pursuit lasted over an hour, with Kuebler directly behind B.D., the defendant behind Kuebler, and at least one other NSP trooper called to the scene for assistance. The entirety of the pursuit was

1

captured on Kuebler's in-car camera, though it ultimately stopped picking up audio, and most of the pursuit was captured on Bixby's in-car camera. The pursuit ultimately ended when the tire on B.D.'s van came off the rim, and the van careened across a lane of opposite traffic and came to a stop in a ditch.

Troopers Kuebler and Bixby pulled in behind and beside the van. Trooper Kuebler and Trooper Bixby both shouted to the driver, "show us your hands" and "get out of the vehicle." The van's reverse lights came on, but the van did not move, and B.D. turned the car off moments later. Then, the van door opened, and B.D. began to stumble from the vehicle, visibly unsteady, with his hands outstretched above his head as he had been instructed. Troopers continued to give B.D. verbal commands to get down on the ground, but B.D. said something to the effect of, "Fuck you, go ahead and shoot me," while B.D. stood with his hands out, palms open and facing the officers.

As B.D. stood with his hands out and palms up, Bixby approached B.D. from the side, with his rifle raised and trained on B.D. Then, Bixby lunged toward B.D., using the butt of the rifle as an impact weapon, striking B.D. in the head. B.D. immediately crumpled, slowly falling into the side of the van and then down to his knee, ultimately falling face-down onto the ground. The defendant kneeled on top of B.D. as he tried to handcuff him with his hands behind his back. B.D. was taken into custody and taken to the hospital for medical clearance.

After B.D. was in custody, NSP troopers located prescription morphine pills and cyclobenzaprine pills in the victim's car. Additionally, B.D. was given a blood test at the hospital, which revealed his blood alcohol level exceeded the legal limit. B.D. was ultimately charged with multiple counts of willful reckless driving (misdemeanor) and operating a vehicle to avoid arrest (felony), and one count of driving under the influence. He pleaded guilty to one count of willful reckless driving and one count of attempting to operate a motor vehicle to avoid arrest, both

misdemeanors.  As a result of the defendant's use of force, B.D. suffered injuries to his ear, the side of his face, and his mouth.

After striking B.D. in the head with the butt of his rifle, the defendant completed a Use of Force (UoF) Report.  He made several other statements about what happened that night, during informal conversations with other troopers, under oath during an administrative proceeding involving revocation of B.D.'s driver's license, and in more formal statements as part of a criminal investigation.  Ultimately, the defendant resigned from NSP on June 24, 2016.

### The Charged Offense

The indictment charges defendant Lindsey Bixby with one count of violating B.D.'s constitutional rights while acting under color of law.  To convict the defendant of this charge, the United States must prove beyond a reasonable doubt that:

(1)  The defendant acted under color of law;

(2)  The defendant deprived B.D. of the right to be free from unreasonable searches and seizures, a right secured by the Constitution or laws of the United States, when he struck B.D. with the buttstock of his patrol-issued rifle;

(3)  The defendant acted willfully; and

(4)  The defendant's conduct resulted in bodily injury to B.D. or it included the use of a dangerous weapon.

### A.  First Element:  Color of Law

The government's evidence will establish that the defendant acted under color of law during the incident described in the indictment.  "An action is under color of law if the defendant misused power that he possessed by virtue of state law and the action was made possible only because the wrongdoer was clothed with the authority of state law." *United States v. Peterson*,

3

887 F.3d 343, 347 (8th Cir. 2018) (citing *United States v. Classic*, 313 U.S. 299 (1941)).  "The element is satisfied if the defendant acts or purports to act in the performance of official duties, even if he oversteps his authority and misuses power." *Johnson v. Phillips*, 664 F.3d 232 (8th Cir. 2011) (finding color-of-law element satisfied where police officer effected a traffic stop while wearing a police uniform and operating a police car, and then sexually assaulted the arrestee).

The evidence will show that the defendant acted under color of law when he used force against B.D.  Though the defendant may not have been on duty when Trooper Kuebler began the pursuit, he joined the pursuit using his official NSP vehicle, and communicated over the official radio channels.  At the time B.D. was apprehended and struck, the defendant was on duty, in uniform, using his patrol-issued firearm, and using his authority as a law-enforcement officer to effectuate the arrest.

## B.  Second Element:  Deprivation of Rights

The government's evidence will establish that the defendant violated B.D.'s right to be free from unreasonable force.  The use of excessive force by a law enforcement officer during an arrest is a violation of the Fourth Amendment.  *See Graham v. Connor*, 490 U.S. 386, 394 (1989).  The Supreme Court has identified several factors to consider when evaluating whether force was or was not objectively reasonable:  the relationship between the need for the use of force and the amount of force used; the extent of the [victim's] injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *see also Graham v. Connor*, 490 U.S. 386, 396 (listing as factors the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

4

by flight"). Other factors may be appropriate as well. *See Kingsley*, 576 U.S. at 397. ("We do not consider that list to be exclusive.").

The government anticipates that the evidence at trial will show that the defendant's use of force against B.D. was excessive. Witnesses will testify and the video will demonstrate that, among other things, when the defendant used force, B.D. did not pose a threat to the defendant, any other officer, or anyone else.

### C. Third Element: Willfully

The government's evidence will establish that the defendant acted voluntarily and intentionally, with the specific intent to do something the law forbids. *Screws v. United States*, 325 U.S. 91, 105-06 (1945); *see also United States v. Boone*, 828 F.3d 705, 711 (8th Cir. 2016) ("To prove willfulness, the government was required to show that [the defendant] acted with specific intent to deprive [the victim] of his constitutional rights."). But the government need not show that "the defendant was aware that the right was protected by the Constitution or that the defendant was 'thinking in constitutional terms.'" *United States v. Dise*, 763 F.2d 586, 592 (3d Cir. 1985) (citing *Screws*, 325 U.S. at 106); *see also* 8th Cir. Crim. Model Jury Instruction 6.18.242 (including "You may find that the defendant acted willfully even if you find that he had no real familiarity with the Constitution or with the particular constitutional right involved"); *id.* at n.1 (collecting cases outside the Circuit). The jury may consider all relevant information in determining willfulness. *Williams v. United States*, 341 U.S. 97, 102 n.1 (1951). Evidence that a defendant failed to be forthright about the assault is also evidence of willfulness. *United States v. Cote*, 544 F.3d 88, 100 (2d Cir. 2008).

### D.  Fourth Element:  Bodily Injury or Dangerous Weapon

To prove a felony violation of § 242, the United States must prove either that bodily injury resulted from the offense or that the offense included the use of a dangerous weapon.  18 U.S.C. § 242.  The government's evidence will establish *both* that the offense resulted in bodily injury to B.D. and that the defendant used a dangerous weapon.

Drawing upon the commonly used definition in other federal statutes, courts have found that, in the context of a § 242 prosecution, the term "bodily injury" means, "(A) a cut, abrasion, bruise, burn or disfigurement; (B) physical pain; (C) illness; (D) impairment of a function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary."  *United States v. Myers*, 972 F.2d 1566, 1572-73 (11th Cir. 1992); *see*, *e.g., United States v. Perkins*, 470 F.3d 150, 161 (adopting definition used in *Myers*) *United States v. Bailey*, 405 F.3d 102, 111 (1st Cir. 2005) (same); *see also* 8th Cir. Model Jury Instruction 6.18.242 (2020) (using same language that was used in from *Myers*).  The evidence will show that the offense resulted in bodily injury to B.D.  In the days after this incident, B.D. experienced significant bruising, swelling, and pain around his ear, face, and jaw.  In addition, and for a longer period of time after the offense, B.D. suffered from severe headaches.

The government's anticipated evidence will also show that the defendant's force against B.D. involved the use of a dangerous weapon.  "What constitutes a dangerous weapon depends not on the nature of the object itself but on its capacity, given the manner of its use, to endanger life or inflict great bodily harm."  *United States v. Moore*, 846 F.2d 1163, 1166 (8th Cir. 1988) (citing *United States v. Bey*, 667 F.2d 7, 11 (5th Cir. 1982) (internal quotation marks omitted).  The question of whether something is a "dangerous weapon" is a question for the jury.  Moreover, "it is not necessary that the object, as used by a defendant, actually cause great bodily harm, as long

as it has the capacity to inflict such harm in the way it was used." *Moore*, 846 F.2d at 1166; *see also United States v. Steele*, 550 F.3d 693, 699 (8th Cir. 2008) (rejecting, in challenge to sufficiency of the evidence, defendant's argument that "because he only kicked [the victim] in the torso, rather than on the head or face, his tennis shoes cannot be considered dangerous"). The evidence will show that the offense involved the use of a dangerous weapon because the defendant used his patrol-issued rifle as an impact weapon. That conclusion is not affected if the jury credits the defendant's anticipated account that he was aiming for B.D.'s shoulder.

### Summary of Evidence

The government's evidence may consist of:

(A) Testimony from B.D. about the assault and its aftermath;

(B) Testimony from law enforcement officers involved with the use-of-force, arrest, medical clearance, and booking of B.D.;

(C) Use of Force reports and other law enforcement reports regarding the arrest of B.D.;

(D) Medical records and other materials documenting B.D.'s injuries;

(E) Written and oral statements by the defendant;

(F) Records and testimony regarding the defendant's training, including training about using force and writing use-of-force reports, use-of-force principles applicable during arrests, and other use-of-force training materials used by NSP; and

(G) Expert testimony about using force, whether the defendant's force comported with his training and generally accepted police practices.

**Evidentiary Issues**

The parties filed motions *in limine* addressing many anticipated evidentiary issues.  Filings

No. 59, 60, 61, 62, 66, 67, 68, 69, 70.  Additionally, the government expects that the evidentiary

issues listed below may arise at trial:

**A. Admission of Defendant's Statements**

During the course of the trial, the Government will seek to offer some statements—some

written, some oral—made by the Defendant.  Prior out-of-court statements that defendant Bixby

made to law enforcement and to other witnesses are admissible by the government in the

government's case-in-chief as evidence of the charged offense and as admissions of a party

opponent.  *See* Fed. R. Evid. 801(d)(2).  By contrast, the defendant may not introduce his own

out-of-court self-serving statements through any witness other than himself.  The government

may seek to admit oral and written statements made by the defendant to investigators and other

witnesses, as well as statements made by the defendant, under oath, during an administrative

proceeding related to B.D.'s driver's license.

The government may admit a defendant's statements in its case-in-chief as non-hearsay

admissions or statements of a party opponent.  *See* Fed. R. Evid. 801(d)(2); *United States v. Lomas*,

826 F.3d 1097, 1105 (8th Cir. 2016); *United States v. Cline*, 570 F.2d 731, 736 (8th Cir. 1978)

("testimony was not hearsay because it was appellant's own statement which was being offered

against him").  In fact, statements made by the defendant are specific evidence of his own

willfulness, an element of the offense.  Here, there is evidence from defendant Bixby's statements,

made to investigators and other witnesses, to indicate that he understood his use of force against

B.D. was excessive.  For example, the defendant acknowledged in oral conversations that he was

concerned about his use of force, and in text messages that he might be disciplined for his use of

force.  Accordingly, Bixby's statements to investigators and to other witnesses are admissible in the government's case as statements of a party opponent.

The government anticipates that defendant Bixby may attempt to improperly introduce portions of his own out-of-court, exculpatory statements through documents or witnesses other than himself, including the defendant's expert witness.[1]  But it is well-settled that a defendant may not seek to use other witnesses to offer into evidence his own prior, out-of-court statements.  Fed. R. Evid. 801(d)(2).  When offered by the declarant, such statements constitute inadmissible hearsay because they are offered by, not against, the party to whom the statement is attributable.  *See id.*; *United States v. Chard*, 115 F.3d 631, 634-35 (8th Cir. 1997) (affirming district court's exclusion of defendant's exculpatory, out-of-court statements as improper hearsay).

A defendant may not introduce such hearsay statements either by eliciting them through a defense witness or by cross-examining government witnesses.  *See id.* (defendant's exculpatory out-of-court statement, if elicited through government witness on cross examination, nonetheless would have been inadmissible hearsay).  In other words, Rule 801(d)(2) precludes defendant Bixby from introducing his own out-of-court statements to the jury without subjecting himself to cross-examination.  *See United States v. Greene*, 995 F.2d 793, 799 (8th Cir. 1993) ("We cannot think that the privilege against self-incrimination extends so far as to allow a defendant's statements to be admitted without also allowing the government a chance to explore the facts surrounding them for motive and other relevant matter.").

The rule of completeness provides a very limited exception to this provision.  This common law doctrine, codified in Federal Rule of Evidence 106, states that, "if a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction . . . of any other

---

[1] For a greater discussion of the limitation against expert testimony relying on inadmissible hearsay, see Government's Motion to Limit Expert Testimony of Liam Duggan (Filing No. 62).

part . . . that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Rule 106 "operates to ensure fairness where a misunderstanding or distortion created by the other party *can only be averted* by the introduction of the full text of the out-of-court statement." *United States v. Ramos-Caraballo*, 375 F.3d 797, 803 (8th Cir. 2004) (emphasis added). And, "it applies only to writings and recorded statements, not to acts or conversations." *McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 747 (8th Cir. 2010) (quoting *United States v. Gordon*, 510 F.3d 811, 816 (8th Cir. 2007)).

Importantly, Rule 106 does not render otherwise inadmissible hearsay admissible. *United States v. Ramos-Caraballo*, 375 F.3d 797, 803 (8th Cir. 2004) (the rule "does not empower a court to admit unrelated hearsay in the interest of fairness and completeness when that hearsay does not come within a defined hearsay exception"); *see also United States v. Shaver*, 89 Fed. App'x 529, 533 (6th Cir. 2004) ("Exculpatory hearsay may not come in solely on the basis of completeness.") (affirming decision not to allow defendant to elicit exculpatory portions of a statement during cross-examination of government witness); *United States v. Ramirez-Perez*, 166 F.3d 1106, 1112 n.7 (11th Cir. 1999) (defendant was not entitled to cross-examine an agent about exculpatory portions of statement even though the agent testified about inculpatory portions of the statement). In other words, absent a need to admit some additional portion of a defendant's written or recorded statement to correct a misleading impression, a defendant's out-of-court statements remain inadmissible hearsay.

Accordingly, the government may offer portions of the defendant's statements without opening the door to the introduction of other portions of those statements, either directly, or on cross-examination, because the statements the government intends to offer place the defendant's

10

statements in their proper context and require no further explanation or clarification to be fairly understood.

## Length of Trial

The United States anticipates that trial could be completed in 2 – 3 days.  The United States anticipates calling the following witnesses:  Dean Christensen, Brian Davis, Clint Elwood, Theresa Hudson, Christopher Jenkins, Kent ("Tony") Kavan, Michael Kerby, Kyle T. Kuebler, Mike Meyer, Peter C. Meyer, M.D.

## Exhibits

The United States does not anticipate there being any issues regarding the exhibits that have not been addressed by the parties' motions in *limine*.  The exhibits that may be offered include: video evidence of the pursuit and the incident giving rise to the charges in the indictment, photos of the rifle and B.D.'s injuries, a demonstrative of the rifle, and audio recording interview of the defendant (and any/all exhibits in the Government's Exhibit List).

Respectfully Submitted,


UNITED STATES OF AMERICA,

JAN W. SHARP
Acting United States Attorney
District of Nebraska


By:      s/ Lecia E. Wright
         LECIA E. WRIGHT, NE #24562
         Assistant U.S. Attorney
         1620 Dodge Street, Suite 1400
         Omaha, NE  68102-1506
         Tel:  (402) 661-3700
         Fax:  (402) 661-3084
         E-mail:  Lecia.Wright@usdoj.gov




         KRISTEN M. CLARKE
         ASSISTANT ATTORNEY GENERAL

         *s/ Cameron A. Bell*
         Cameron A. Bell
         Trial Attorney
         Civil Rights Division, Criminal Section
         U.S. Department of Justice
         950 Pennsylvania Ave. NW
         Washington, DC 20530
         Tel: 202-514-0449
         Fax: 202-514-6588
         Email: Cameron.Bell@usdoj.gov


## CERTIFICATE OF SERVICE

        I hereby certify that on October 26, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all registered participants.

         s/ Lecia Wright
         Assistant U.S. Attorney